UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT GANT, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) No. 13 C 6231 |
| v. | ) |
| | ) Judge Thomas M. Durkin |
| CITY OF CHICAGO, CARLOS C. CANNON | ) |
| RONALD O. FORGUE, MAURICE A. RHONE | ) |
| RASASHOD P. FENNER, JASON B. NICHOLS, | ) |
| | ) |
| DEFENDANTS. | ) |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendants' joint motion for summary judgment. This case was set for trial on March 14, 2016. At the pretrial conference held March 10, 2016, Plaintiff's counsel made clear that after review of the medical testimony in this matter, Plaintiff would be unable to prove what was previously a central tenet of his case: that Defendants' failure to provide him with eye drops while he was in lockup caused his vision loss in his left eye. Counsel said instead that Plaintiff would be seeking damages at trial related to the anxiety he suffered during the time he was in custody arising from his mistaken belief that the failure to administer the eye drops would cause him to lose his eyesight. Given the change in Plaintiff's theory, counsel for the defendants asked for the opportunity to move for summary judgment, which the Court allowed, and the trial date was vacated. The motion for

summary judgment has been fully briefed. For the reasons set forth below, it is granted.

**Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Background**

The facts, taken in the light most favorable to the plaintiff, are as follows. On June 20, 2012 Plaintiff was stabbed in his left eye and he suffered an extremely serious eye injury. He had surgery the next day. Prior to the surgery, his vision was limited to light perception. Following surgery, his prognosis for useful vision in his left eye was poor. He was prescribed three medications to prevent infection and reduce inflammation in the eye. None of the three medications was prescribed to

restore Plaintiff's vision. One of the prescriptions, an oral antibiotic, Plaintiff never filled. The other two prescriptions were for eye drop medications—one, a topical antibiotic to prevent infection, and the other, a steroid to reduce inflammation. Both drops were to be administered four times a day.

At a follow up appointment a week after the surgery, Plaintiff was examined and found still to have vision limited to light perception in his left eye, a poor connection of the nervous tissue between the eye and the brain, as well as significant bleeding within the globe. The prognosis for the eye remained poor, and Plaintiff was told he would need a second surgery.

Four days after the follow up appointment, on June 30, 2012, Plaintiff was arrested by the Chicago police sometime in the late morning or early afternoon. At the time of the arrest, he was wearing a large eye patch over his left eye and had some medical supplies on his person, including a bottle of eye drops. It is unclear from the record whether these eye drops were the ones prescribed to Plaintiff after his surgery. After his arrest, Plaintiff was taken to the Fifth District police station. During his processing at the station, he made no request for any medication or medical attention. At 2:00 p.m. there was a shift change, following which Plaintiff told one of the lockup keepers that he needed to go to a doctor, although he did not tell him why. In response, the lockup keeper told Plaintiff "this ain't no hospital; should have thought of that before you got here."

Several hours later, around 10:30 p.m., a friend of Plaintiff's came to the police station with his medication and asked an officer to give it to Plaintiff. She

3

told the officer that Plaintiff had recently undergone surgery and that without the medication, he could lose his eyesight. The officer refused to take the medication on the basis that he did not know what was in the bottle(s).

Plaintiff was released from custody on July 1, 2012, less than 24 hours after his arrest. He missed, at most, four doses of the prescribed drops during that time. On July 20, 2012, he underwent a second surgery on his left eye as planned. Unfortunately, the surgery was unsuccessful; there were no improvements in Plaintiff's vision and his prognosis for useful vision in the left eye remained poor. Significantly, there is no dispute that none of the medications prescribed following the first surgery would have prevented or limited the scar tissue which formed in Plaintiff's left eye, which is the reason the second surgery was unsuccessful.

## Discussion

Plaintiff sued a number Chicago Police Department employees for failure to provide medical attention under Section 1983 and the Fourteenth Amendment of the United States Constitution. Because Plaintiff's claims arose prior to any preliminary hearing, his claims are evaluated under the reasonableness standard of the Fourth Amendment. *See Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011) ("Our cases [ ] establish that the protections of the Fourth Amendment apply at arrest and through the *Gerstein* probable cause hearing, due process principles govern pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following conviction."). The following four factors are relevant to determining whether an officer's response to a

4

pre-hearing detainee's medical needs is "objectively unreasonable:" "(1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns." *Id.* The plaintiff must also establish that the defendants' conduct caused the harm of which he complains. *Id.* "[T]he severity of the medical condition under this standard need not, on its own, rise to the level of objective seriousness required under the Eighth and Fourteenth Amendments. Instead, the Fourth Amendment's reasonableness analysis operates on a sliding scale, balancing the seriousness of the medical need with the third factor—the scope of the requested treatment." *Id.* (quoting *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007)).

Taking the facts in the light most favorable to Plaintiff, a reasonable jury could find that at least some of the defendant officers were on notice of Plaintiff's request for medical treatment.[1] Plaintiff had a very conspicuous patch over his left eye and asked to see a doctor. A friend of his came to the lockup with medication and explained to at least one officer that Plaintiff had recently undergone eye surgery. Still, no action was taken to address Plaintiff's request for treatment.

But the failure to act despite notice of a serious medical *condition* is not in itself "objectively unreasonable." *See Williams*, 509 F.3d at 401-02. Rather, for this

---

[1] There are various factual disputes as to who was aware of Plaintiff's request for treatment and the record appears undisputed that at least several of the defendants were unaware of the request. Because the Court decides this motion on other grounds, it does not need to address which of the defendants knew what exactly, and when.

5

failure to violate Plaintiff's civil rights, he must show that at the time he was detained and interacting with the defendants, he actually had a serious medical *need* for the requested treatment. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (a serious medical need is "a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated"). Of course, Plaintiff had a serious injury—the stab wound to his eye. That is not the issue. The key question is whether he had a serious medical need for the eye drops such that his failure to receive them caused him further significant injury.[2] No reasonable jury could find that the defendants' failure to respond to Plaintiff's request for treatment caused or exacerbated the damage to his eye; there is simply no evidence that Plaintiff's condition worsened after missing his eye drops while in police custody. Plaintiff did not develop an infection during or after his time in custody nor did he suffer inflammation not otherwise attributable to the stab wound or surgery. Despite Plaintiff's serious medical condition, he had no serious need for the

---

[2] Plaintiff does not advance a claim for wanton infliction of pain. Taken in the light most favorable to Plaintiff, the eye drops, if he had received them, may have reduced itching or irritation in his left eye for the period he was in police custody. Minor discomforts like itching and irritation do not, without more, rise to the level of compensable pain under Section 1983. *See, e.g., Cooper v. Casey,* 97 F.3d 914, 916 (7th Cir. 1996) (holding that a prison employee's "refus[al] to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution."); *see also Perez v. Hardy*, 2015 WL 5081355, at * 7 (N.D. Ill. Aug. 27, 2015) (collecting authority for the proposition that chronic or even intense itching, without more, is not a "serious medical need" for the purposes of a deliberate indifference inquiry).

prescribed medication during the relatively limited period of time he was in lockup. This is fatal to his claim.

In many ways, this is similar to the situation in *Williams v. Rodriguez*. The plaintiff in that case had chronic asthma and repeatedly requested his inhaler and emergency medical treatment following his arrest. 509 F.3d 392. His requests were ignored. *Id.* The Seventh Circuit found that while the plaintiff's asthma had at times been serious and even life-threatening, the condition alone was an insufficient basis for a deliberate indifference claim where the medical records showed that he did not require treatment for asthma on the night of his arrest. *Id.* at 401-02. *Williams* teaches that it is the need for treatment, and not just the condition itself that must be objectively serious. Plaintiff's medical records show, and Plaintiff concedes, that he did not need the prescribed eye drops to prevent the further deterioration of his medical condition. Indeed his medical condition, though undoubtedly serious, did not deteriorate while he was in lockup (he only believed it could). In evaluating the reasonableness of the officers' conduct, the Court considers the absence of a serious medical need dispositive of the claim.

To the extent Plaintiff claims he suffered anxiety because he thought he needed the drops to prevent further vision loss, it is unclear whether anxiety premised on a subjective belief, even if reasonably held, is a cognizable constitutional injury. *See, e.g.*, *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996) ("However legitimate [the plaintiff's] fears may have been, we nevertheless believe that it is the reasonably preventable [injury] itself, rather than any fear of [injury],

7

that gives rise to a compensable claim under the Eighth Amendment" for deliberate indifference.); *Cooper*, 97 F.3d at 916 ("The Constitution is not a charter of protection for hypochondriacs."). What is clear, however, is that to prevail against any of the defendants, Plaintiff must show that it was their conduct that caused him harm. *See Ortiz*, 656 F.3d at 530. Plaintiff's anxiety here was caused, at least in part, by his own mistaken belief regarding the purpose of the eye drops. There is no evidence that any doctor ever told Plaintiff that the eye drops would restore or prevent further deterioration of his already severely compromised eyesight. To the extent the defendants caused Plaintiff to suffer emotional damages, then, it was only because Plaintiff ascribed false significance to their failure to provide him with eye drops. There is no need for the Court to decide whether Plaintiff's anxiety constitutes a compensable injury, however, because it finds there was no serious medical need for the eye drops in the first place.

**Conclusion**

The Court is troubled by the defendants' apparent lack of concern for the plaintiff's readily-apparent serious medical condition. A detainee's request for medication after sustaining a stab wound to the eye and undergoing recent eye surgery should have at the very least prompted the officers to make further inquiry about the nature of the plaintiff's need for the medication. Simply ignoring the plaintiff was not right. The defendants are fortunate, however, as is the plaintiff, that the failure to provide the plaintiff with the eye drops caused no further damage to his eye. It is because the eye drops were not needed, and because the plaintiff

was not harmed by the defendants' inaction, that the motion for summary judgment is granted.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: February 13, 2017